Filed 5/9/22  Urteaga v. Darling CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OSCAR URTEAGA, | D077909 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 19FDV03331C) |
| MELANIE DARLING, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Ernest M. Gross, Judge.  Affirmed.

Oscar N. Urteaga, in pro. per., for Plaintiff and Appellant.

Melanie Darling, in pro. per., for Defendant and Respondent.

I.

INTRODUCTION

Appellant Oscar Urteaga, appearing in propria persona, appeals from the trial court's issuance of a five-year domestic violence restraining order

(DVRO) protecting respondent Melanie Darling,[1] as well as her husband and children, from him.

Although Urteaga's opening brief[2] is not a model of clarity, we discern that Urteaga is displeased with the court's issuance of the DVRO against him, and its denial of his request for a DVRO against Darling. Urteaga contends that the trial court erred in (1) granting the domestic violence restraining order "without making requisite findings" as required under the Domestic Violence Protection Act; (2) considering "a related pending criminal matter involving the parties," which, Urteaga maintains, "unfairly influenced and resulted in the expression of a bias and lack of impartiality" on the part of the court; (3) issuing a five year restraining order against him, which, according to Urteaga, is "grossly excessive, manifestly disproportionate, [and] unsupported by the evidence"; and (4) making certain interlocutory rulings. Urteaga also asks this court "to order urgent disposition of this case" and to "grant[ ] immediate relief by Writ." We conclude that Urteaga has not demonstrated reversible error. We therefore affirm the trial court's five-year DVRO.

## II.

## BACKGROUND

Urteaga and Darling were in a dating relationship for a period of approximately two years. Both parties claim to have been trying to end the relationship prior to seeking assistance from the court.

In June 2019, Darling sought and obtained a temporary restraining order (TRO) against Urteaga. After reaching an informal agreement with

---

[1] Darling has also appeared in propria persona on appeal.

[2] Urteaga has not filed a reply brief.

Urteaga, Darling agreed to dismiss the TRO, and sought a dismissal as of July 1, 2019.

According to the documents filed by both parties, the pair continued to have contact with each other after July 1, 2019.

On August 1, 2019, Urteaga filed a request for a DVRO protecting him from Darling. On the form that he filed to request a DVRO, Urteaga marked a box indicating that he and Darling "are dating or used to date, or we are or used to be engaged to be married." On that date, the trial court issued a TRO protecting Urteaga. The TRO was set to expire at the conclusion of the hearing on Urteaga's request for a DVRO, which was initially set for August 19, 2019.

On August 14, 2019, Darling filed a request for a DVRO protecting her from Urteaga; the document was identified by the court as a "cross-complaint." On that same date, the court issued a TRO protecting Darling, as well as her husband and daughters, from further contact by Urteaga. The TRO was set to expire at the conclusion of the hearing on Darling's request for a DVRO, which was initially set for August 26, 2019.

On August 19, 2019, at Urteaga's request, the trial court continued the hearing on Urteaga's request for a DVRO to October 7, 2019, and also continued the upcoming hearing on Darling's request for a DVRO to that same date. After that point in time, both parties requested multiple continuances of the hearing on the requests for DVROs. Some of these requests indicated that continuances were being sought to permit a pending criminal case against Urteaga to proceed first. At some point, the court also issued an order continuing the hearing on the parties' requests for DVROs "[d]ue to the COVID-19 pandemic."

On January 10, 2020, Urteaga, who at this point was representing himself in the restraining order proceeding, filed a request for an order granting summary judgment in his favor as to Darling's request for a DVRO.

The court held a hearing on the requests for DVROs, as well as Urteaga's motion for summary judgment, on July 27, 2020. The court denied Urteaga's motion for summary judgment. After taking evidence in the form of testimony and considering the parties' papers submitted in support of their respective positions, the court ultimately entered a DVRO protecting Darling, as well as her husband and three children, from Urteaga for a period of five years. The order restrains Urteaga from, among other things, harassing, threatening, stalking, disturbing the peace, and contacting the protected individuals. It also requires that Urteaga "stay at least . . . 100 yards away from" the protected individuals. The court did not issue an order protecting Urteaga from Darling.

Urteaga filed a timely notice of appeal from the court's entry of the DVRO.[3]

---

[3] On April 1, 2021, Urteaga filed a request for judicial notice in which he asks this court to judicially notice "related cases and court records" from four separate proceedings, which he identifies as "*Darling v. Urteaga* (19FDV02476E)," "*State of CA v. Urteaga* (CE393842)," "*State of CA v. Urteaga* (C399119DV)," and "*Thiele v. Patterson* (19FDV04618S)."

On October 29, 2021, Urteaga filed a request for judicial notice in which he asks this court to judicially notice the "record" in "*Oscar Urteaga v. Jason Darling* No. 37-2021-00038244-CU-HR-EC."

We deny both requests for judicial notice because Urteaga has failed to demonstrate the relevance of the records or documents in these other cases to his appeal in this case. (See, e.g., *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4 [denying request for judicial notice based on failure to demonstrate relevance].)

4

III.

DISCUSSION

The arguments that Urteaga raises in his brief are difficult to understand. However, we are able to discern that Urteaga believes that the trial court erred in granting Darling's request for a DVRO. Although Urteaga has not set forth any of the relevant standards of review pertaining to an appeal from the issuance of a DVRO, we will set forth those standards and apply them to the record before us.

The Domestic Violence Protection Act (DVPA; Fam. Code, § 6200 et seq.) allows a trial court to issue a protective order " ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." ' " (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225 (*Davila*).) The DVPA defines " 'abuse' " (§ 6203) to include, among other things, "molesting, attacking, [or] striking" (§ 6320), or intentionally or recklessly "caus[ing] or attempt[ing] to cause bodily injury" (§ 6203, subd. (a)(1)) to someone with whom "the respondent is having or has had a dating or engagement relationship" (§ 6211, subd. (c)). "The DVPA requires a showing of past abuse by a preponderance of the evidence." (*Davila*, at p. 226.) The court may issue a DVRO for up to five years after a noticed hearing. (§ 6345, subd. (a).)

On appeal, we review an order granting or denying a DVRO for an abuse of discretion. (*Davila, supra*, 29 Cal.App.5th at p. 226.) We consider whether the trial court's findings underlying the issuance of a DVRO are supported by substantial evidence. (*Ibid.*; *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 379.) In reviewing findings for sufficiency of the evidence, actual findings are liberally construed to support the judgment, and

5

we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) A single witness's testimony may constitute substantial evidence to support a finding (*ibid.*), and it is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 365.) However, a trial court's decisions regarding what evidence to consider in deciding whether to issue a DVRO are reviewed for abuse of discretion. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115.)

In addition, it is axiomatic that we begin our evaluation of a judgment or order with the following basic principle of appellate review in mind: "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

In this case, the court made a finding that Darling met her burden of proof to demonstrate that Urteaga had engaged in abuse, specifically crediting Darling's testimony about that abuse as provided in her written declaration, as well as orally at the hearing. The court explained:

> "And that leaves us with now whether the evidence presented meets the burden of proof by a preponderance of the evidence. Preponderance of the evidence is different than the criminal courts. The criminal courts['] [standard of proof] is beyond a reasonable doubt. The best analogy I can give you is that if we were playing football, preponderance of the evidence is just getting over the 50-yard line. That's all that matters is that the 50 -- it's 51 percent or better. In the criminal courts, you pretty much have to score a touchdown as to beyond a reasonable doubt standard, and it takes much more evidence.
>
> "In this case, I find that the moving party, Ms. Darling, has met her burden of proof. She has tipped the scales in her

6

favor by that 51 percent or better both by the statements in her declaration and the testimony received today by the witnesses. I find that the respondent, or pardon me, Mr. Urteaga's conduct meets the definition of domestic violence or abuse in both his verbal and physical actions that have been entered into evidence today.

"So, based on that, I'm going to order a permanent restraining order. And it will be as to not only Ms. Darling, but also her husband and three daughters. It will be for a period of five years and end on July 27th, 2025, at midnight. It will be the same terms and conditions as the temporary restraining order. And that will be the order of the Court."

The record contains substantial evidence to support the trial court's finding that Urteaga engaged in past acts of abuse. Darling submitted a declaration in which she recounted a specific act of abuse that occurred on August 9, 2019, while Darling was at the Sycuan Hotel with some family members and friends. Darling stated that Urteaga came to the hotel and she agreed to meet him at the valet area. During their interaction, Urteaga "grabbed [her] left arm[,] opened the car door and shoved [her] in the car." According to Darling, Urteaga proceeded to yell at her and hit her on different parts of her body, which caused bruising and resulted in a black eye.[4] Darling described how she escaped from the car and obtained assistance from hotel security officers. Darling also stated that Urteaga "continues to" call and e-mail her. At the hearing, Darling testified that the allegations she stated in her declaration were "accurate and correct," and proceeded to orally recount the events of August 9, 2019. Darling also testified that Urteaga had been "texting porn links and dating sites to

---

[4]    Respondent included photographs that she asserted showed some of the bruising she suffered as a result of Urteaga's actions on August 9, 2019.

[Darling's children] who are 7, 10, and 12 years old," and relayed that one day after the August 9, 2019 events, Urteaga arrived at Darling's home, "jumped over the fence," and entered Darling's home uninvited. Darling also indicated that Urteaga had come to her house and "jump[ed] over the fence" into her backyard on other occasions. In another incident about which Darling and her husband both testified, Urteaga approached Darling and her husband while they were in the parking lot of the East County courthouse after Darling had just testified in a case against Urteaga. According to the Darlings, Urteaga "threw a cup of coffee" at them.

The court determined that Darling's statements about Urteaga's acts of abuse were credible. As previously noted, determinations regarding the credibility of witnesses "are the province of the trial court." (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364.) Moreover, Darling's testimony clearly provides substantial evidence to support the trial court's finding that Urteaga engaged in past abuse: " 'The testimony of one witness, even that of a party, may constitute substantial evidence' " supporting the issuance of a DVRO; extrinsic evidence corroborating a party's claim of abuse is not required. (*In re Marriage of Ankola, supra*, 53 Cal.App.5th at p. 380.) Given the court's finding that the abuse occurred as described by Darling, and given the history of abuse that Urteaga engaged in, we conclude that Urteaga has not demonstrated that the trial court abused its discretion in granting Darling a domestic violence restraining order protecting her and her family for a period of five years.

Urteaga sets forth additional, more specific arguments in his briefing, all of which we find unmeritorious. For example, Urteaga suggests under one argument heading that this court should consider his appeal to be a writ, and should grant him "immediate relief." In criminal and civil proceedings,

8

review of interlocutory rulings of trial courts by extraordinary writ generally is available *only if there is no adequate remedy by appeal*. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 263, as modified on denial of rehearing Dec. 19, 1985.) Here, Urteaga has an adequate remedy by way of an appeal; he has the right to appeal directly from the trial court's grant of the DVRO, and he has in fact taken an appeal from that order. (See Code Civ. Proc., § 904.1, subd. (a)(6) [appeal may be taken from an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction]; see also *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187 [civil harassment restraining orders are injunctions from which appeals may be taken].) There is thus no reason to treat Urteaga's appeal as a writ.

Urteaga also argues that the trial court failed to make findings required by the DVPA before issuing the DVRO restraining his conduct. According to Urteaga, "Family Code Section 6305 requires a court to make detailed factual findings that a party acted as a primary aggressor and not primarily in self-defense in order to issue a DVRO." Urteaga contends that the trial court erred in "declining to consider [that he] was acting in self-defense." However, Family Code section 6305's requirements apply only where a court issues a *mutual* restraining order. In such a circumstance, the court must "make[ ] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (Fam. Code, § 6305, subd. (a)(2).) There is no requirement that the court make these same particularized findings of fact when issuing a DVRO as to a single party. (See Fam. Code, §§ 6300, subd. (a), 6304.) Urteaga has therefore not demonstrated error with respect to the findings necessary to issue the DVRO in this case.

9

Urteaga next argues that the court "did not sufficiently consider [his] DV-120 papers." (Boldface and underlining omitted.) However, apart from simply asserting that the court did not "adequately consider" his opposition papers, Urteaga cites to no portion of the record from which one could conclude that the court did not consider and weigh the contentions contained in the papers filed by both parties. Merely asserting that the court did not consider one's filings is insufficient to raise a meritorious issue on appeal, given that an appellate court must presume that a trial court "considered all the pertinent matters presented to it." (*Lydig Construction, Inc. v. Martinez Steel Corp.* (2015) 234 Cal.App.4th 937, 945; see *GGIS Ins. Services, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1493, 1504, fn. 1 ["We presume that the trial court considered all of the papers filed in connection with Petitioners' motion for summary adjudication, and Petitioners have not shown otherwise"].) We therefore reject this argument, as well.

To the extent that Urteaga intends to argue that the court erred in not granting his motion for summary judgment, we conclude that the argument is nonsensical and is therefore unreviewable, even assuming that a motion for summary judgment is procedurally proper in the context of a request for a restraining order. Although Urteaga references a variety of legal principles in this section of his brief, including res judicata and collateral estoppel, he fails to explain how such principles apply in the context of his summary judgment motion. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["[S]uggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)

Urteaga sets forth another unclear argument under the heading "The Court Erred and Misapplied the Law By Permitting Respondent to Introduce Evidence Outside the Original Pleadings and Improperly Shifting the Burden of Proof Away from the Respondent." In this section of his brief, Urteaga again refers to general principles of law, but it is not at all clear that any of these principles are applicable to this case. Urteaga makes no reference to parts of the record that would permit us to assess whether the general principles of law he describes are pertinent. "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.]" (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.) We therefore conclude that this argument has been forfeited.

Finally, Urteaga takes issue with the court's determination that the DVRO should remain in effect for a period of five years. He contends that the five-year period is "excessive, manifestly disproportionate, and unsupported by the evidence, and undesired by the Respondent herself." (Boldface and some capitalization omitted.) Urteaga appears to be arguing that the court imposed the five-year term for the DVRO because "[t]he Court simply declined to consider, and/or did not equally weigh my factual and evidentiary objections in my DV-120 opposition papers; and/or . . . [t]he Court presumptions of 'Guilt by association' as a result of the pending parallel criminal case." Urteaga thus appears to request that this court reweigh the evidence and conclude that the trial court weighed the evidence incorrectly in deciding to impose a five-year term for the DVRO. That is not the role of a

11

reviewing court. We have already concluded that there is substantial evidence to support the trial court's finding that Urteaga engaged in past abuse, and we have further concluded that the court did not abuse its discretion in determining that a restraining order protecting Darling and her family was appropriate. It is the trial court that makes determinations of credibility, and the court clearly found Darling to be more credible than Urteaga with respect to the matters about which the parties testified. It is not the role of the appellate court to reassess or reweigh the evidence, and we are bound by the trial court's credibility determinations. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.)

IV.

DISPOSITION

The order of the trial court is affirmed. Darling is entitled to recover her costs on appeal.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

12